Not for Publication

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| INNOVATIVE SPORTS MANAGEMENT, INC. d/b/a INTEGRATED SPORTS MEDIA,<br><br>*Plaintiff*,<br><br>v.<br><br>EL ROBLE RESTAURANT AND BAKERY LLC d/b/a EL ROBLE RESTAURANT AND BAKERY and CAROLINA SANCHEZ,<br><br>*Defendants*. | Civil Action No. 22-1612<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court on Plaintiff's unopposed motion for default judgment against Defendants Carolina Sanchez and El Roble Restaurant and Bakery (individually "El Roble" and collectively "Defendants") under Federal Rule of Civil Procedure 55(b). D.E. 8. The Court reviewed all submissions made in support of the motion and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons that follow, Plaintiff's motion is **GRANTED**.

**I.     FACTUAL[1] AND PROCEDURAL HISTORY**

Plaintiff was granted exclusive nationwide commercial distribution rights to the Columbia v. Ecuador soccer game telecast on November 19, 2019 (the "Program"). Compl. ¶ 19. Pursuant

---

[1] The facts of this matter are derived from the Complaint, D.E. 1, as well as Plaintiff's brief, D.E. 8-3, affidavits and exhibits, D.E. 8-1, -2, submitted in support of the instant motion.

to its contractual rights, Plaintiff entered into sublicense agreements with various establishments in New Jersey that granted these establishments "limited rights to publicly exhibit the Program within their respective commercial establishments" in exchange for a fee.  *Id.* ¶¶ 20-23. Transmission of the Program was electronically coded or "scrambled."  To view the Program clearly, the transmission needed to be decoded with electronic equipment.  *Id.* ¶ 24.  Plaintiff provided the decoding equipment to establishments with which it had entered into sublicense agreements.  *Id.* ¶ 25.

Plaintiff alleges that Sanchez is the owner and/or operator of El Roble, a commercial restaurant, and had the ability to and did supervise activities at El Roble on November 19, 2019. *Id.* ¶¶ 12-13; *see also* Peters Cert., Exs. B, C.  Plaintiff further alleges that on November 19, 2019, Defendants broadcasted the Program on up to seven televisions while selling food and beverage to patrons.  *Id.* ¶¶ 26, 29.  Plaintiff did not enter into any sublicensing agreement with Defendants that would have allowed Defendants to broadcast the Program.

Plaintiff filed its five-count complaint against Defendants on March 22, 2022, alleging, amongst other things, that Defendants knowingly and willfully violated the Communications Act of 1934, 47 U.S.C. §§ 553 and 605.  In Count One, Plaintiff alleges that in violation of Section 605, Defendants unlawfully intercepted Plaintiff's signal via satellite transmission and broadcasted the Program to patrons on November 19, 2019.  *Id.* ¶¶ 27-35.  Alternatively, Plaintiff contends in Count Two that Defendants unlawfully intercepted the signal via a cable system in violation of Section 553.  *Id.* ¶¶ 36-41.

Defendants were served in New Jersey on May 25, 2022.  D.E. 4, 5.  On October 12, 2022,

Plaintiff requested that default be entered against Defendants for their failure to answer or otherwise respond to the Complaint. D.E. 7. The Clerk of the Court subsequently entered default, and Plaintiff filed the instant motion for default judgment. D.E. 8.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 allows for the entry of default against a party that fails to plead or otherwise defend against claims. Fed. R. Civ. P. 55. "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits, . . . and [has] repeatedly state[d] [its] preference that cases be disposed of on the merits whenever practicable.'" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir.1984)).

In entering a default judgment due to a defendant's failure to answer, a court must determine whether (1) it has personal and subject matter jurisdiction; (2) the defendants were properly served; (3) the complaint sufficiently pleads a cause of action; and (4) the plaintiff has proven damages. *Days Inns Worldwide, Inc. v. Jinisha Inc.*, No. 14-6794, 2015 WL 4508413, at *1 (D.N.J. July 24, 2015). Additionally, a court must determine the appropriateness of default judgment by weighing (1) the prejudice suffered by the party seeking default judgment; (2) whether the party subject to the default has a meritorious defense; and (3) the culpability of the party subject to default. *Id.* at *2.

## III. ANALYSIS

1. **Jurisdiction**

"Before entering a default judgment as to a party 'that has not filed responsive pleadings,

3

the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045, 2015 WL 273656, at *2 (D.N.J. Jan. 22, 2015) (quoting *Ramada Worldwide, Inc. v. Benton Harbor Hari Ohm, L.L.C.*, No. 08–3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008)). The Court has subject matter jurisdiction over this matter. Plaintiff asserts claims pursuant to 47 U.S.C. §§ 553(a) and 605(a), which both provide private rights of action for an aggrieved party. *See* 47 U.S.C. § 553(c), § 605(e). The Court, therefore, has federal question subject matter jurisdiction over Plaintiff's claims. *See* 28 U.S.C. § 1331. The Court also has personal jurisdiction over Defendants because Plaintiff personally served Sanchez in New Jersey and also served her as the registered agent of El Roble. *See* Fed. R. Civ. P. 4(e), (h)(1); N.J. Ct. R. 4:4-4(a) ("The primary method of obtaining *in personam* jurisdiction over a defendant in this State is by causing the summons and complaint to be personally served within this State[.]"). Moreover, the Court appears to have general personal jurisdiction over both Defendants; certainly, the Court has specific personal jurisdiction as to the unlawful airing of the Program.

   2. **Sufficiency of Plaintiff's Causes of Action**

Next, the Court must determine whether the Complaint states a proper cause of action. The Court must accept all well-pleaded factual allegations in the pleadings as true except as to damages. *Chanel, Inc.*, 558 F. Supp. 2d at 535-36. Plaintiff seeks relief solely as to Count One, its claim pursuant to 47 U.S.C. § 605. Plf. Br. at 4. To state a claim under Section 605, a plaintiff must establish that defendants "(1) intercepted a broadcast; (2) were not authorized to intercept the broadcast; and (3) showed the broadcast to others." *J & J Sports Prods., Inc. v. Edrington*, No.

10-3789, 2012 WL 525970, at *2 (D.N.J. Feb. 16, 2012).  In addition, a plaintiff may receive enhanced damages by showing that "the interception of the broadcast was willful and for commercial advantage or private gain." *Id.*

Plaintiff pleads that it had the exclusive right to distribute the Program, that it had entered into sublicense agreements with various establishments in New Jersey permitting the establishments to broadcast the Program to patrons, and that it did not enter into such a sublicense agreement with El Roble.  Compl. ¶¶ 19-25.  This is sufficient to establish that El Roble was not authorized to intercept the broadcast.  *See Joe Hand Promotions, Inc. v. Waldron*, No. 11-849, 2013 WL 1007398, at *3 (D.N.J. March 13, 2013).  Further, Plaintiff's independent investigator went to El Roble on November 19, 2019 and saw that El Roble was showing the Program to patrons.  The investigator observed the Program on three televisions and counted eleven to sixteen patrons while she was in the restaurant.  Plf. Aff., Ex. B.  This is sufficient to establish that El Roble intercepted the broadcast and showed it to others for commercial gain.  *Waldron*, 2012 WL 525970, at *2.  Plaintiff, therefore, states a claim in Count One as to El Roble and establishes that enhanced damages are appropriate.

Plaintiff also seeks to hold Sanchez individually liable.  To do so, Plaintiff must demonstrate that Sanchez

> (1) has the right and ability to supervise the violative activity, although [s]he need not be supervising, because [s]he need not know of the violative activity, and (2) has a direct financial interest in the violation, i.e. financial benefits, even if not proportional or precisely calculable, that directly flow from the violative activity.

*J & J Sports Prods., Inc. v. Ramsey*, 757 F. App'x 93, 95 (3d Cir. 2018) (internal quotations and

5

citation omitted).

Here, Plaintiff pleads that Sanchez is the president, registered agent, and an officer or member of El Roble. Compl. ¶¶ 8-9. At the same time, a person does not have a financial interest "simply because the individual defendant is president and/or a shareholder of the codefendant corporation." *J & J Sports Prods., Inc. v. Cruz*, No. 14-2496, 2015 WL 2376290, at *4 (E.D. Pa. May 18, 2015) (citing *Yakubets*, 3 F. Supp. 3d at 295-96). In addition, Plaintiff alleges that Sanchez had a direct financial interest in the activities at El Roble and that El Roble sold food and beverages to patrons on November 19, 2019. Compl. ¶¶ 11-18, 26. Moreover, Plaintiff pleads, upon information and belief, that El Roble's broadcast of the Program resulted in increased profits. *Id.* ¶ 17.

As for Sanchez's ability to supervise the wrongful conduct, Plaintiff does not allege that Sanchez was present at El Roble on November 19, 2019. Plaintiff does, however, contend that Sanchez had the ability to supervise employees and activities at El Roble and directed employees to intercept the Program. *Id.* ¶¶ 11-13. In addition, Sanchez is the registered agent and president of El Roble. *See* Peters Cert., Ex C (El Roble's limited liability company amendment indicating that Sanchez is the registered agent, managing member and current owner). And Plaintiff does not allege that anyone other than Sanchez stood to benefit from the illicit showing of the Program. *See* As a result, Plaintiff states a claim in Count One as to Sanchez and establishes that enhanced damages are appropriate.

### 3. Proof of Damages

While the factual allegations of the complaint "will be taken as true," the amount of

6

damages must still be proven. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). "If the damages are not for a sum certain or for a sum which can by computation be made certain, the court may conduct such hearings or order such references as it deems necessary and proper." *Id.* (citing Fed. R. Civ. P. 55(b)(2)) (internal quotation marks omitted). Where, as here, a plaintiff seeks statutory damages, costs, and attorney's fees, a court may award damages without a hearing. *Waldron*, 2013 WL 1007398, at *4.

Section 605(e)(3)(C) provides that an aggrieved party may receive actual damages or statutory damages for an amount between $1,000 to $10,000 per violation, which "the court considers just." 47 U.S.C. § 605(e)(3)(C)(i). If enhanced damages are available, a court may increase the award by up to $100,000 for each violation. 47 U.S.C. § 605(e)(3)(C)(ii). A court shall also award attorney's fees and costs to a prevailing aggrieved party. 47 US.C. § 605(e)(3)(B)(iii).

### a. Statutory Damages

Plaintiff seeks $3,000 in statutory damages, which is treble the licensing fee. Plaintiff maintains that this amount is necessary to compensate Plaintiff and serve as a deterrent. Plf. Br. at 10, 16. Although Plaintiff argues otherwise, courts within this district generally award statutory damages pursuant to Section 605 that approximate actual damages. *See, e.g.*, *G&G Closed Cir. Events, LLC v. Misty's Rest. & Bar, Inc.*, No. 19-8395, 2021 WL 5494392, at *3 (D.N.J. Nov. 23, 2021) (awarding statutory damages that reflected actual damages); *G&G Closed Cir. Events, LLC v. Don Tequila Bar & Grill, L.L.C.*, No. 19-84, 2020 WL 133033, at *3 (D.N.J. Jan. 13, 2020) (collecting cases as to the same). "To determine actual damages, an appropriate starting point is

7

to assess the cost of the licensing fee the defendants ought to have paid in order to broadcast legally." *Premium Sports, Inc. v. Silva*, No. 15-1071, 2016 WL 223702, at *2 (D.N.J. Jan. 19, 2016) (citation omitted). Plaintiff states that with the approximate capacity of 60 patrons, El Roble would have been required to pay $1,000 for a sublicense fee. Plf. Aff. ¶ 8. As a result, the Court will award Plaintiff $1,000 in statutory damages.

### b. Enhanced Damages

Plaintiff also seeks $10,000 in enhanced damages, arguing that this amount "will fairly achieve the statutory goals of restitution and deterrence." Plf. Br. at 10. To calculate enhanced damages courts within the district consider the following five factors: (1) whether the defendant has intercepted unauthorized broadcasts repeatedly and over an extended period of time; (2) whether it reaped substantial profits from the unauthorized exhibition in question; (3) whether the plaintiff suffered significant actual damages; (4) whether the defendant advertised its intent to broadcast the event; and (5) whether the defendant levied a cover charge or significant premiums on its food and drink because of the broadcast. *Waldron*, 2013 WL 1007398, at *7. Plaintiff does not provide evidence as to the first, second, fourth or fifth factors but notes that because Defendants defaulted, it has not had the opportunity to conduct discovery. Plf. Br. at 18. As for the third factor, Plaintiff states that "persistent signal piracy" cost it millions of dollars of loss annually. Plf. Aff. ¶¶ 12-13. Thus, nothing in the record would allow the Court to determine how much Defendant profited by broadcasting the Program at issue here. But because Plaintiff establishes willfulness, *id.* ¶¶ 9-11, enhanced damages are appropriate. As such, the Court awards Plaintiff $2,000 in enhanced damages, which is an amount consistent with other courts in this district. *See,*

*e.g.*, *Don Tequila Bar & Grill L.L.C.*, 2020 WL 133033, at *3 (awarding twice the amount of statutory damages as enhanced damages and collecting cases with similar enhanced damages awards).

### c. Attorney's Fees and Costs

As the prevailing party, Plaintiff is entitled to recover attorney's fees and costs for this matter. 47 US.C. § 605(e)(3)(B)(iii). Plaintiff requests thirty days to submit its request for fees and costs in this matter. Plf. Br. at 24. The Court grants Plaintiff's request.

### 4. Default Judgment Factors

Before entering default judgment, district courts must make explicit factual findings as to (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default. *Moroccanoil, Inc. v. JMG Freight Grp. LLC*, No. 14-5608, 2015 WL 6673839, at *1 (D.N.J. Oct. 30, 2015). Here, all three factors weigh in favor of entering default judgment. First, because Defendants have not responded in this matter, Defendants "put forth no evidence or facts containing any information that could provide the basis for a meritorious defense." *HICA Educ. Loan Corp.*, 2015 WL 273656, at *3. Additionally, there is nothing on the face of the Complaint indicating that a meritorious defense is available. Next, without a default judgment, Plaintiff has no other means to seek relief for the harm allegedly caused by Defendants. As a result, Plaintiff will be prejudiced if default judgment is not entered. *See Int'l Union of Painters v. Andrews Window Servs. LLC*, No. 15-3583, 2016 WL 3234516, at *3 (D.N.J. June 7, 2016). Finally, Defendants' failure to answer, without providing any reasonable explanation, permits the Court to draw an inference of

culpability on its part. *Id*. As a result, the Court finds that default judgment is warranted.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's motion for default judgment is **GRANTED**. An appropriate Order accompanies this opinion.

Dated: November 29, 2022

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　John Michael Vazquez, U.S.D.J.